CATHY RUSSELL                                    CIVIL ACTION

VERSUS                                              NO. 18-4157

CHEVRON U.S.A., INC.                       SECTION "R" (4)


## ORDER AND REASONS

Before the Court are defendant Chevron U.S.A., Inc.'s motion to dismiss plaintiff's complaint for state law tort claims arising from her termination of employment, and alternative motion to strike.[1] The Court grants defendant's motion to dismiss because plaintiff fails to state her claims in accordance with the pleading requirements set by the Federal Rules of Civil Procedure.


## I.    BACKGROUND

This case arises out of a dispute between plaintiff Cathy Russell and defendant, her former employer.[2] On or about July 28, 2014, plaintiff began working for defendant in its offices in St. Tammany Parish, Louisiana.[3] At

---

[1]    R. Doc. 8.
[2]    R. Doc. 1-1.
[3]    *Id.* at 1 ¶¶ 3-4.

all times relevant here, plaintiff held the position of Office Assistant to Steve Conner, the Manager of Deepwater Operations.[4]   On October 11, 2016, plaintiff received an email from Human Relations Investigator Bob Baggs informing plaintiff that he would need to meet with her.[5]  This meeting was evidently in connection with an investigation into plaintiff's workplace behavior.[6]  Plaintiff alleges that this investigation concluded on October 25, 2016, with no "negative action[s]" taken against her.[7]

On October 28, 2016, Conner allegedly told plaintiff during an employee evaluation that she "had a problem working with her peers."[8] After this evaluation, plaintiff called the "Chevron Hotline" and stated that she had been the subject of an improper investigation, that she was subjected to harassment, and that she did not have the opportunity to defend herself properly.[9]  Plaintiff alleges that the Chevron Hotline "is supposed to allow employees to report, in a risk-free way, activities of fellow employees."[10]  On November 10, 2016, Conner allegedly met with plaintiff and asked her to sign a "Record of Discussion" that plaintiff asserts contained "frivolous and false

---

[4]     *Id.* at 2 ¶ 12.
[5]     *Id.* at 3 ¶ 21.
[6]     *Id.*
[7]     *Id.* at 4 ¶ 23.
[8]     *Id.* ¶ 24.
[9]     *Id.* ¶¶ 25, 27.
[10]    *Id.* ¶ 26.

accusations."[11]  Plaintiff then met with a member of Human Resources, who allegedly advised her to not sign the Record of Discussion.[12]  The next day, November 11, 2016, plaintiff called the Chevron Hotline to allege further harassment.[13]

On November 14, 2016, plaintiff was allegedly placed on immediate suspension with pay.[14]  She then contacted the Chevron Hotline for the third time.[15]  On December 16, 2016, plaintiff was allegedly informed via letter that she was terminated.[16]  Plaintiff alleges that in the letter, defendant falsely stated that her termination was because she had "exhibited ongoing behavioral issues negatively impacting her performance and the business."[17]  Plaintiff further alleges that after she was fired, defendant made "multiple false statements" regarding the circumstances of her employment and termination to third parties, including the U.S. Equal Employment Opportunity Commission (EEOC) and the "Louisiana Department of Labor/Louisiana Workforce Commission" (LDL/LWC).[18]

---

[11]   *Id.* ¶ 28.
[12]   *Id.* at 4-5 ¶¶ 30-31.
[13]   *Id.* at 5 ¶ 32.
[14]   *Id.* ¶ 33.
[15]   *Id.* ¶ 35.
[16]   *Id.* ¶ 36.
[17]   *Id.* ¶ 37.
[18]   *Id.* at 5-6 ¶ 38.

On December 11, 2017, plaintiff filed a petition for damages against defendant in the 22nd Judicial Court in the Parish of St. Tammany.[19] Plaintiff's complaint includes state law claims for fraud and intentional misrepresentation, defamation, detrimental reliance, and intentional infliction of emotional distress.[20] On April 23, 2018, defendant removed the action to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332.[21] On May 21, 2018, defendant moved to dismiss plaintiff's complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, to strike any allegations premised on statements defendant allegedly made to the EEOC or LDL/LWC, pursuant to Article 971 of the Louisiana Code of Civil Procedure.[22] Plaintiff opposes the motion.[23]

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially

---

[19]   *Id.*
[20]   *Id.*
[21]   R. Doc. 1.
[22]   R. Doc. 8.
[23]   R. Doc. 14.

4

plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Iqbal*, 556 U.S. at 678. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal relevant evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. The claim must be dismissed if there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## III.  DISCUSSION

### A.    Defendant's Motion to Dismiss

#### i.    *Fraud and Intentional Misrepresentation*

Louisiana law defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."  La. Civ. Code art. 1953.  The elements of a Louisiana fraud and intentional misrepresentation claim are: 1) a misrepresentation of a material fact; 2) made with intent to deceive; and 3) causing justifiable reliance with resultant injury.  *Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008); *see also Gonzalez v. Gonzalez*, 20 So.3d 557, 563 (La. App. 4 Cir. 2009).

Plaintiff's state law fraud claim is subject to Federal Rule of Civil Procedure 9(b), which imposes a heightened pleading requirement.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).  Under Rule 9(b), the plaintiff "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d

200, 207 (5th Cir. 2009). In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). Finally, "although scienter may be 'averred generally,' . . . pleading scienter requires more than a simple allegation that a defendant had fraudulent intent. To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting Fed. R. Civ. P. 9(b)).

Plaintiff alleges that defendant "knowingly made false statements and/or misrepresentations" to her, the EEOC, and the LDL/LWC.[24] These misrepresentations allegedly included: (1) that plaintiff no longer worked for defendant when defendant's investigations of her were conducted; (2) that plaintiff "violated company policies," (3) that plaintiff "committed a dishonest act," (4) that plaintiff "had a drinking problem," (5) that plaintiff "lost custody of her son," and (6) that plaintiff "was causing problems at work."[25] Plaintiff alleges that defendant made these statements "for financial gain and/or to harm [her]."[26] Plaintiff alleges that she, the EEOC, and the

---

[24] R. Doc. 1-1 at 5-6 ¶ 38, 6 ¶ 42, 7 ¶ 45.
[25] *Id.* at 6 ¶¶ 39, 42.
[26] *Id.* at 6-7 ¶ 44.

7

LDL/LWC all relied on these misrepresentations, and that she sustained damages as a result.[27]

Plaintiff's fraud allegations fail to satisfy the Rule (9)(b) pleading standard because she fails to allege with any particularity the specifics of the fraud defendant allegedly perpetrated. Plaintiff does not explain *who* at defendant made the alleged fraudulent misstatements or *how* exactly she was harmed by them. *See Benchmark Elecs., Inc.*, 343 F.3d at 723 ("Rule 9(b) requires the who, what, when, where, and how to be laid out.") (internal quotation omitted). Plaintiff also has not sufficiently pleaded that defendant acted with the requisite scienter, because plaintiff fails to "set forth specific facts that support an inference of fraud." *See Tuchman*, 14 F.3d at 1068. Plaintiff alleges that employees for defendant made the alleged misrepresentations for defendant's "financial gain" or "to harm" plaintiff. But plaintiff does not state with any particularity what financial gain may have accrued to defendant or how the alleged misstatements to the third-parties harmed plaintiff.

Plaintiff attempts to fill these gaps in her complaint by providing additional factual allegations in her opposition to defendant's motion.[28]

---

27    *Id.* at 7 ¶¶ 45, 47.
28    R. Doc. 14 at 7.

Plaintiff states that defendant made the alleged misstatements to the EEOC and LDL/LWC to "deprive [her] of her right to assert a claim for discrimination against defendant," and to "suppress the truth and prevent her from receiving unemployment benefits."[29] The Court cannot consider these additional allegations when adjudicating defendant's motion to dismiss. *See Estes v. JP Morgan Chase Bank, Nat'l Ass'n*, 613 F. App'x 277, 280 (5th Cir. 2015) (district court did not err when refusing to consider new factual allegations in plaintiff's opposition, because "when deciding a Rule 12(b)(6) motion, a district court generally must limit itself to the contents of the pleadings"); *Sartin v. EKF Diagnostics, Inc.*, No. 16-1816, 2016 WL 3598297, at *4 (E.D. La. July 5, 2016) (refusing to consider additional factual allegations plaintiff included in his opposition explaining the exact nature of his injury). Plaintiff does not allege in the complaint that she failed to obtain unemployment benefits because of defendant's statements to the third-parties. Instead, plaintiff alludes only to her attempt to obtain unemployment benefits when explaining how she discovered defendant's alleged misrepresentations.[30]

---

[29]    *Id.*
[30]    *See* R. Doc. 1-1 at 6 ¶ 43.

Finally, plaintiff's contention that *she* justifiably relied on defendant's allegedly false statements *about her* is facially implausible. *See Iqbal*, 556 U.S. at 678 (requiring plaintiff to state a claim for relief that is "plausible on its face"). Because plaintiff does not believe that defendant's statements about her are true, it defies comprehension how she could have relied upon them to her injury. Plaintiff also bases her fraud claim on the EEOC and LDL/LWC's reliance on defendant's allegedly false statements. But it is unclear under Louisiana law whether plaintiff can state a claim for fraud by alleging she was injured when third-parties justifiably relied on defendant's false statements. *See Currier v. Entergy Servs., Inc.*, No. 11-2208, 2014 WL 1093687, at *8-9 & n.17 (E.D. La. Mar. 14, 2014) (expressing skepticism that a fraud claim alleging third-party reliance is legally viable under Louisiana law); *Schaumburg v. State Farm Mut. Auto Ins. Co.*, 421 F. App'x 434, 442 (5th Cir. 2011) ("Louisiana jurisprudence indicates that the following are the elements of the tort of fraud . . . 3. reasonable or justifiable reliance by *the plaintiff* . . .") (emphasis added); *but see LeJeune v. Paramount Nissan, LLC*, 102 So. 3d 203, 208 (La. App. 3 Cir. 2012) (plaintiff stated a viable cause of action for fraud against car dealer who fraudulently misrepresented the plaintiff's job title and income to third-party credit agency, which resulted in injury to the plaintiff). Ultimately, the Court need not decide whether

Louisiana law allows for a fraud cause of action based upon third-party reliance, because plaintiff fails to plead her claim for the separate reasons already mentioned.

Because plaintiff has failed to plead her claim for fraud and intentional misrepresentation with the particularly required by Rule 9(b), that claim must be dismissed.

### ii. Defamation

Under Louisiana law, "[f]our elements are necessary to establish a claim for defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 674 (La. 2006). "In other words, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages." *Fitzgerald v. Tucker*, 737 So. 2d 706, 715-16 (La. 1999) (internal quotation omitted). Falsity, malice (or fault), and injury may be presumed if "a plaintiff proves publication of words that are defamatory per se," although this presumption is rebuttable. *Kennedy*, 935 So. 3d at 675.

"[P]rivilege is a defense to a defamation action." *Id.* at 681. When a defendant's statements are entitled to a qualified privilege, the defendant can

be held liable only if the privilege was abused. *Id.* at 682. A defendant abuses the privilege if he makes the statement knowing it is false or "with reckless disregard as to its truth or falsity." *Id.* at 684. The Louisiana Supreme Court has explained that whether a defendant has abused a qualified privilege is "generally a fact question for the jury." *Id.* at 682. But when on the face of a complaint it appears that the defendant's alleged statements are entitled to a qualified privilege, courts have inquired at the motion to dismiss stage whether the plaintiff has pleaded facts alleging the defendant acted with the requisite scienter to show an abuse of the privilege. *See Hoffman v. Bailey*, No. 13-5153, 2016 WL 409613, at *10-11 (E.D. La. Feb. 3, 2016); *Duncan v. City of Hammond*, No. 08-5043, 2009 WL 10680100, at *4-5 (E.D. La. July 9, 2009); *Rogers v. Ash Grove Cement Co.*, 799 So. 2d 841, 845-46 (La. App. 2 Cir. 2001); *see also Schmidt v. Cal-Dive Int'l, Inc.*, 240 F. Supp. 3d 532, 550-51 (W.D. La. 2017); *Brownlow v. Lab. Corp. of Am.*, 254 F.3d 1081, 2001 WL 563785, at *2 (5th Cir. 2001) (affirming district court opinion dismissing plaintiff's defamation claim because the plaintiff failed to allege that defendant acted with the mental state sufficient to overcome a qualified privilege defense).

Here, plaintiff alleges that "employees of defendant . . . made false, misleading, and defamatory statements to third parties" and other

employees about her.[31]   The alleged defamatory statements are that plaintiff "acted unprofessionally," "violated company policy," "failed to perform her job duties," "committed a dishonest act," "had a drinking problem," and "lost custody of her son."[32]  Plaintiff alleges that as a result of these statements she has sustained significant damages, including "lost business opportunities, harm to her business and personal reputation, and mental anguish and emotional distress."[33]

Plaintiff has failed to sufficiently allege her defamation claim.  First, under Louisiana law, statements made by employees to their coworkers in the course and scope of their employment cannot form the basis of a defamation claim because such statements are not considered "publicized." *See Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Par.*, 327 F. App'x 472, 480 (5th Cir. 2009) ("Statements made between employees in the course and scope of their employment are not statements communicated or publicized to third persons so as to constitute publication for a defamation claim."); *Doe v. Grant*, 839 So. 2d 408, 416 (La. App. 4 Cir. 2003) (ruling that communications between hospital employees made during the course of their employment could not be considered "publicized" to sustain a

---

[31]     R. Doc. 1-1 at 6 ¶ 42, 7 ¶ 51.
[32]     *Id.* at 7-8 ¶ 50.
[33]     *Id.* at 9 ¶ 58.

13

defamation claim).  Plaintiff explicitly alleges that defendant's employees made defamatory statements about her to other coworkers "in the course and scope of their employment."[34]  Plaintiff's defamation claim therefore must be dismissed to the extent it is based upon allegedly defamatory statements made by one employee of defendant to another.

Second, plaintiff's claim that employees for the defendant made defamatory statements to "third parties" must also be dismissed because the statements are subject to a qualified privilege.  Plaintiff does not specifically state which "third parties" were the recipients of the alleged defamatory statements.  It is nonetheless apparent from the face of the complaint that the alleged statements were made to the EEOC during an EEOC investigation initiated by plaintiff.[35]  In particular, plaintiff states that she "discovered the publication of the[] defamatory statements . . . during the EEOC's investigation of her charge of discrimination."[36]

Statements to the EEOC are entitled to a qualified privilege under Louisiana law when they are made during the course of an investigation related to a charge of discrimination.  *See Stockstill v. Shell Oil Co.*, 3 F.3d 868, 872 (5th Cir. 1993); *see also Ratcliff v. Exxonmobil Corp.*, No. 01-2618,

---

[34]     *Id.* at 8 ¶ 51.
[35]     *See id.* ¶ 52.
[36]     *Id.*

14

2002 WL 1315625, at *13 (E.D. La. June 13, 2002). Thus, to sufficiently plead her defamation claim, plaintiff must allege in her complaint that employees for defendant abused this privilege—that they made the alleged defamatory statements knowing they were false or "with reckless disregard as to [their] truth or falsity." *Kennedy*, 935 So. 3d at 684. Plaintiff fails to allege that defendant is not entitled to its qualified privilege. Plaintiff alleges in conclusory fashion that defendant "knew *or should have known*" that its statements to the EEOC were false and defamatory.[37] Alleging that defendant's employees "should have known" their statements were false is equivalent to alleging that they acted with negligence, which is insufficient to defeat the privilege. *Id.* ("[M]ere negligence as to falsity (or a lack of reasonable grounds for believing the statement to be true) is [not] sufficient to prove abuse of the conditional privilege.").

But even if the Court were to construe plaintiff's complaint as asserting that defendant's employees knew their statements about plaintiff were false, plaintiff has failed to provide any *factual support* that they acted with this mental state. Such a lack of factual support would alone be reason to dismiss plaintiff's defamation claim. *See Rogers*, 799 So. 2d at 846 (affirming lower court's dismissal of plaintiff's complaint because defendants were entitled to

---

[37]     *Id.* at 8 ¶¶ 53-54 (emphasis added).

a qualified privilege and plaintiff failed to include "allegations of fact that the [defendants] intended to harm the plaintiff or that they knew the [allegedly false statements] were not true"); *cf. Duncan*, 2009 WL 10680100, at *4-5 (denying motion to dismiss when defendant was entitled to a qualified privilege but plaintiff asserted facts supporting an inference that defendant acted with a reckless disregard for the truth); *Hoffman*, 2016 WL 409613, at *11 (same).

Plaintiff's defamation claim therefore must be dismissed.

### iii.    Detrimental Reliance

Under Louisiana law, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La. Civ. Code art. 1967. To establish a claim of detrimental reliance a plaintiff must demonstrate "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Suire v. Lafayette City-Par. Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005) (citing cases). The theory of detrimental reliance focuses on "whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment." *Id.* The doctrine is "designed to prevent injustice

by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *Id.* But claims of detrimental reliance are "not favored in Louisiana [and] . . . must be examined carefully and strictly." *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 334 (5th Cir. 2007).

Plaintiff's threadbare detrimental reliance allegation lacks the necessary factual support to withstand defendant's motion to dismiss. Plaintiff alleges she "reasonably relied upon the representations that [defendant] made to [her] relating to her employment and termination," and that because of her reliance on those representations she "suffered a change in position."[38] But plaintiff does not specify what representations she relied upon. Nor does plaintiff explain how her reliance caused her to suffer a change in position. This vague and conclusory allegation falls far short of the pleading standard set by *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678 (explaining that an allegation must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action).

Plaintiff again attempts to supplement her deficient pleading by providing new factual allegations in her opposition. Plaintiff states in her opposition that defendant "advised her that the complaints she made to the Chevron Hotline were encouraged and would be protected," and that she

---

[38] R. Doc. 1-1 at 9 ¶¶ 61, 63.

relied upon this representation only to be "terminated . . . for using the hotline."[39] Plaintiff does not allege in her complaint that defendant made any representations surrounding the confidentiality of the company hotline. Instead, in the factual background section plaintiff obliquely states that "[t]he Chevron Hotline is supposed to allow employees to report, in a risk-free way, activities of fellow employees."[40] The Court cannot substitute the new factual allegations in plaintiff's opposition for the allegations in her complaint. *See Estes*, 613 F. App'x at 280; *Sartin*, 2016 WL 3598297, at *4.

Because plaintiff's detrimental reliance claim fails to satisfy the requisite pleading standard, that claim must also be dismissed.

### iv.    *Intentional Infliction of Emotional Distress*

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant intended to inflict severe emotional distress, or knew that such distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). To satisfy the first element, the defendant's conduct must "go beyond all possible

---

[39]    R. Doc. 14 at 10.
[40]    R. Doc. 1-1 at 4 ¶ 26.

18

bounds of decency, and . . . be regarded as atrocious and utterly intolerable in a civilized community." *Id.* Such conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.* "[I]n a workplace setting," Louisiana courts have "limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time." *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1026 (La. 2000).

Plaintiff does not specify which statements or actions underlie her claim for intentional inflection of emotional distress.[41] Construing plaintiff's complaint broadly, the Court reads it as alleging that the following statements or actions have caused her emotional distress: (1) defendant's commencement of a workplace investigation into plaintiff's behavior;[42] (2) Conner's allegedly false statement during plaintiff's employee evaluation that she "had a problem working with her peers;[43] (3) defendant's allegedly false statement in plaintiff's termination letter that she "has exhibited an ongoing pattern of behavioral issues negatively impacting her performance

---

[41] *Id.* at 10 ¶¶ 65-69.
[42] *Id.* at 3 ¶ 21.
[43] *Id.* at 4 ¶ 24.

and the business;"[44] and (4) the allegedly fraudulent and defamatory statements that employees for defendant made to their coworkers, the EEOC, and the LDL/LWC after plaintiff was terminated.[45]

Plaintiff's allegations do not constitute the type of "extreme and outrageous" behavior necessary to sustain a claim for intentional infliction of emotional distress. *See White*, 585 So. 2d at 1209. Courts applying Louisiana law have dismissed allegations asserting similar types of workplace conduct. *See Perez v. City of New Orleans*, 173 F. Supp. 3d 337, 354 (E.D. La. 2016) (former police officer's allegations that police department disciplined him, denied him a promotion, demeaned him to the public, and "unnecessarily criticiz[ed] him" did not state claim for intentional infliction of emotional distress); *Stewart v. Parish of Jefferson*, 668 So. 2d 1292, 1294 (La. App. 3 Cir. 1996) (affirming trial judge's dismissal of plaintiff's claim that his employer raised his voice while questioning plaintiff, increased plaintiff's workload, and pressured plaintiff to take a demotion that ultimately led to his termination); *see also Iturralde v. Shaw*

---

[44] *Id.* at 5 ¶ 37.

[45] *Id.* at 6 ¶¶ 39, 42 (as addressed previously, these statements included that plaintiff violated company policy, committed a dishonest act, was causing problems at work, had a drinking problem, had lost custody of her son, and that she no longer worked for defendant when the company investigation was conducted).

*Grp., Inc.*, 512 F. App'x 430, 435 (5th Cir. 2013) (noting that "a termination in itself is not extreme and outrageous" behavior).

Plaintiff's claim for intentional infliction of emotional distress therefore must be dismissed.

### B.     Defendant's Alternative Motion to Strike

Defendant alternatively moves to strike plaintiff's claims that are based on statements allegedly made to the EEOC and the LDL/LWC, because those statements are protected by Louisiana's anti-SLAPP statute.  The anti-SLAPP statute protects a defendant from civil liability for statements made "in connection with a public issue" in a limited set of circumstances, "unless the Court determines that the plaintiff has established a probability of success" on his claim for damages.  La. Code Civ. Pro. Art. 971(A).  Because the Court finds that plaintiff has failed to satisfy even the more lenient pleading standard mandated by the Federal Rules of Civil Procedure, the Court denies defendant's alternative motion to strike as moot.

### C.     Plaintiff's Motion Seeking Leave to Amend Complaint

Plaintiff has requested leave to amend her complaint in the event the Court dismisses any of her claims.[46]  The Court will "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).  The Supreme Court

---

[46]     *See* R. Doc. 14 at 7, 10, 11.

has held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend, however, "is by no means automatic." *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994). The Court considers multiple factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182.

After considering these factors, the Court grants plaintiff leave to amend her complaint. Plaintiff has not shown bad faith or dilatory motive in this litigation, and the Court has not granted her leave to amend her complaint previously. Nor does the Court find that amendment would necessarily be futile. It is evident from plaintiff's opposition that she is able

to provide more factual support for her claims than what she included in her first complaint.

## IV.  CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED, and defendant's alternative motion to strike is DENIED AS MOOT.  Plaintiff has 21 days to amend her complaint.

New Orleans, Louisiana, this __4th__ day of October, 2018.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE